FILED
2026 Sep-24 PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ALICIA ANN LEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:26-cv-1022-CLS** |
| | ) | |
| **CITY OF GUNTERSVILLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Alicia Ann Lee, was employed as a police officer by defendant, the City of Guntersville, Alabama, for three years and nine months, from August 15, 2022, until May 18, 2026, when she resigned her employment. Doc. no. 7 (First Amended Complaint), ¶¶ 1, 5, 6.[1] She filed this action on June 9, 2026, asserting claims of sex discrimination, retaliation, hostile work environment, and retaliatory hostile environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Counts One through Four); and, under 42 U.S.C. § 1983, for violation of her rights secured by the Equal Protection Clause of the Fourteenth Amendment (Count Five).

Defendant filed a motion to dismiss plaintiff's amended complaint, contending

[1] Plaintiff's "First Amended Complaint" contains two paragraphs that are numbered "5," and two paragraphs that are numbered "6." Doc. no. 7, at 2. The reference in text is to the second paragraph "5," and the initial paragraph "6."

that it violated Rules 8 and 10 of the Federal Rules of Civil Procedure, and that it was an impermissible "shotgun pleading." Defendant also argues that some of plaintiff's claims should be dismissed on substantive grounds.

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That rule must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*, the contention that "a court must accept as true all of the allegations contained in a complaint" does not apply to "*legal conclusions*. *Threadbare recitals of the elements of a cause of action*, supported by mere conclusory statements, do not suffice." *Id.* at 678 (emphasis supplied).

## I. DISCUSSION

Defendant's primary argument for dismissal of plaintiff's amended complaint is that it constitutes an impermissible "shotgun pleading." In addition to the

requirement that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Rule 10 requires a plaintiff to "state [her] claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b) (alteration supplied). So-called "shotgun pleadings" violate those rules because they "fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Sheriff's Department*, 792 F.3d 1313, 1323 (11th Cir. 2015) (ellipsis supplied).

The Eleventh Circuit has repeatedly condemned shotgun pleadings, and demonstrated "little tolerance" for them. *See, e,g.*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018); *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008) (listing numerous cases). Shotgun pleadings "waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the courts.'" *Vibe Micro*, 878 F.3d at 1295 (quoting *Davis*, 516 F.3d at 981-83) (alterations in original).

The Eleventh Circuit's opinion in *Weiland v. Palm Beach Sheriff's Department*, *supra*, identified four categories of shotgun pleadings:

**[1]** The most common type — by a long shot — is a complaint

> containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. **[2]** The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. **[3]** The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim of relief. **[4]** Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

792 F.3d at 1321-23 (bracketed alterations and ellipsis supplied, footnotes omitted).

Plaintiff's First Amended Complaint plainly commits the first sin: *that is*, each count of her complaint incorporates *all* of the allegations of all preceding paragraphs. Plaintiff does not address that deficiency in her response to defendant's motion. See doc. no. 18 (Plaintiff's Response in Opposition to Defendant's Motion to Dismiss). For that reason alone, defendant's motion could be granted. Even so, the Eleventh Circuit has held that where dismissal would be based upon non-merits, "shotgun" grounds, "the proper remedy [is] to order repleading *sua sponte*." *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) (alteration supplied). Accordingly, plaintiff will be afforded an opportunity to amend her current complaint.

Even so, two claims warrant separate discussion: *i.e.*, plaintiff's Title VII

hostile work environment claim alleged in Count Three of the First Amended Complaint; and, the claim asserted under 42 U.S.C. § 1983 for defendant's alleged violation of rights secured to plaintiff by the Equal Protection Clause of the Fourteenth Amendment, contained in Count Five.

### A. Hostile Work Environment

In order to prove a hostile work environment claim under Title VII, a plaintiff must demonstrate:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden*, *Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*) (citation omitted).

The Eleventh Circuit summarized the standards for evaluating the sufficiency of a claim for a hostile work environment in *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798 (11th Cir. 2010), in which the Court held that:

> "Workplace conduct is not measured in isolation." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam). Rather, the evidence of harassment is considered both cumulatively and in the totality of the circumstances. *Mendoza*,

> 195 F.3d at 1242.
>
> Either severity *or* pervasiveness is sufficient to establish a violation of Title VII. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) (noting that hostile work environment claims "require[ ] harassment that is severe or pervasive") (emphasis added). In evaluating allegedly discriminatory conduct, we consider its "frequency . . .; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris* [*v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)], at 23, quoted in *Mendoza*, 195 F.3d at 1258 (Tjoflat, J., concurring in part, and dissenting in part).
>
> Moreover, the plaintiff must prove that the environment was both subjectively and objectively hostile. *Id*. at 21-22, 114 S. Ct. 367. "The employee must 'subjectively perceive' the harassment as sufficiently severe and [*sic*] pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Mendoza*, 195 F.3d at 1246 (quoting *Harris*, 510 U.S. at 21-22, 114 S. Ct. 367). "So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious. *Harris*, 510 U.S. at 22, 114 S. Ct. 367 (citation omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale* [*v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998)], at 81 (quoting *Harris*, 510 U.S. at 23, 114 S. Ct. 367).

*Reeves v. C.H. Robinson*, 594 F.3d at 808-09 (alterations supplied).

As an initial matter, Count Three contains conclusory allegations that are not entitled to a presumption of truth. For example:

- "During her employment, Plaintiff was subjected to unwelcome harassment because of her sex." Doc. no. 7 (First Amended

Complaint), ¶ 73.

- “The conduct directed toward Plaintiff was unwelcome and was based upon her sex.” *Id.*, ¶ 80.

- “The harassment was severe and pervasive, occurred over an extended period of time, and altered the terms and conditions of Plaintiff’s employment.” *Id.*, ¶ 81.

- “Defendant knew or should have known of the harassment and failed to take prompt and effective corrective action.” *Id.*, ¶ 82.

Other allegations duplicate those contained in plaintiff’s claim of disparate treatment in Count One:

- “As described above and herein, Plaintiff was subjected to disparate treatment, heightened scrutiny, repeated criticism, and discipline not imposed upon similarly situated male officers.” Doc. no. 7 (First Amended Complaint), ¶ 75.

- “Male officers were afforded privileges and benefits denied to Plaintiff, including the continued use of take-home vehicles despite living farther from the department.” *Id.*, ¶ 76.

- “Plaintiff was repeatedly subjected to disciplinary actions, warnings, inspections, negative comments regarding her competence, and other conduct that male officers were not required to endure.” *Id.*, ¶ 77.

- “Plaintiff was denied promotional opportunities that were afforded to less qualified or less experienced male officers.” *Id.*, ¶ 78.

Those allegations refer to discrete acts, and “cannot be brought under a hostile work environment claim that centers on ‘discriminatory intimidation, ridicule, and

insult.'" *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008) (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

That leaves only three allegations in support of plaintiff's claim that she was subjected to a hostile work environment:

- "Plaintiff is a member of a protected class as a female." Doc. no. 7 (First Amended Complaint), ¶ 72.
- "Plaintiff's co-workers openly questioned how long she would remain on a shift before she became scared, reflecting hostility and discriminatory stereotypes regarding female police officers." *Id*. ¶ 74.
- "Supervisors and coworkers engaged in conduct that demeaned Plaintiff's abilities and standing as a female law enforcement officer." *Id*., ¶ 79.

Those allegations must be read together with the statements contained in the second paragraph numbered "6" in plaintiff's amended complaint:[2] "On or about November 18, 2022, Plaintiff was transferred from C shift to A shift. Plaintiff's A shift peers were 'placing bets as to how long Plaintiff would make it on the shift before Plaintiff 'got scared.'" Doc. no. 7 (First Amended Complaint), second numbered ¶ 6.[3]

Those allegations do not support a hostile work environment claim. As an initial matter, a charge of discrimination must be filed with the Equal Employment

[2] As recorded in note 1, *supra*, plaintiff's "First Amended Complaint" contains two paragraphs numbered "5," and two paragraphs numbered "6." Doc. no. 7, at 2.

[3] *Id*.

Opportunity Commission within 180 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1603.102(a). Plaintiff's co-workers' speculation that she would become "scared" while working the "A shift" could only have occurred between November 18, 2022 (the date on which plaintiff was assigned to the "A shift"), and September 13, 2023 (when she was transferred to the "D shift"[4]). Plaintiff filed a charge of discrimination on July 22, 2025,[5] well beyond 180 days from any conduct that may have occurred while plaintiff was assigned to the "A shift." Therefore, her claim based upon that allegation is time-barred.

Even if it were not, plaintiff has not plausibly alleged a hostile work environment. To be actionable, the alleged harassing conduct must bear "the necessary sexual or other gender-related connotations." *Mendoza*, 195 F.3d at 1247. The fact (if it be a fact) that plaintiffs' co-workers questioned the length of time it would take for her to become "scared" while assigned to the "A shift" does not meet that bar.

Additionally, plaintiff's allegation that unspecified supervisors and coworkers engaged in unspecified conduct that she found demeaning is too vague to support a claim that the workplace was "permeated with discriminatory intimidation, ridicule,

---

[4] *Id.*, ¶ 7.

[5] *See* doc. no. 4 (Charge of Discrimination).

and insult" that was either severe or pervasive, and that was based upon plaintiff's sex. *Tonkyro v. Secretary, Department of Veterans Affairs*, 995 F.3d 828, 836-37 (11th Cir. 2021) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). Although detailed factual allegations are not required, plaintiff's allegations do not sufficiently satisfy her obligation to provide the grounds of her entitlement to relief. *See Twombly*, 550 U.S. at 555. Accordingly, and for all of the foregoing reasons, Count Three of plaintiff's First Amended Complaint will be dismissed.

**B. Municipal Liability Claim Under 42 U.S.C. § 1983**

Count Five of the first amended complaint also does not plausibly allege a claim of sex discrimination under 42 U.S.C. § 1983, in violation of rights secured to plaintiff by the Equal Protection Clause of the Fourteenth Amendment.

The Supreme Court held in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), that a local governmental entity cannot be held vicariously liable for violations of § 1983 by one of its employees under a theory of *respondeat superior*: in other words, "a municipality cannot be held liable solely because it employs a tortfeasor." *Id*. at 691.[6] Instead, a municipality may be held

[6] *Respondeat superior* is a Latin phrase meaning "let the master answer," and it often is used to describe a doctrine imposing liability on one person for the actionable conduct of another, based solely on a relationship between the two persons. Thus, liability in common law tort and contract actions often may be imputed to employers for the actions of their employees. *See generally* Black's

accountable in damages for the conduct of a particular governmental actor only when the plaintiff shows that execution of the local governmental entity's official "policy"[7] or "custom"[8] effectively was the cause of the injury complained of. *Id*. at 694. It does not matter whether the policy was enacted by the local governmental entity's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id*.[9]

---

Law Dictionary 1313 (7th ed. 1999), defining *respondeat superior* as: "The doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *See also* W. Page Keeton *et al*., The Law of Torts § 69, at 500 (5th ed. 1984), observing that:

> Most courts have made little or no effort to explain the result, and have taken refuge in rather empty phrases, such as "he who does a thing through another does it himself," or the endlessly repeated formula of "respondeat superior," which in itself means nothing more than "look to the man higher up."

[7] The Eleventh Circuit has defined a policy as "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.*

[8] "A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2035-36).

[9] The evolution of modern § 1983 doctrine actually began a decade prior to the *Monell* decision, with the case of *Monroe v. Pape*, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961). *Monroe* opened the sluice to a "swelling tide of § 1983 actions [which] threaten[ed] to engulf the federal courts . . . ." *Thurman v. Rose*, 575 F. Supp. 1488, 1491 (N.D. Ind. 1983). Even so, the Supreme Court attempted to limit the force of its decision in *Monroe* by holding that the City of Chicago, the municipal defendant in that case, was *not* a "person" subject to suit under the statute and, therefore, could not be held liable for the actions of its officers. *Monroe*, 365 U.S. at 192, 81 S. Ct. at 486. Blanket immunity for municipalities lasted until the 1978 decision in *Monell v. Dept. of Social Servs*., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), when the Court reversed that aspect of its holding in *Monroe*, and held that a municipality *did* qualify as a "person" liable to suit under § 1983. "The *Monell* . . . decision made any city, county, or local jurisdiction subject to a lawsuit whenever one of its employees abridged any federal constitutional or statutory command." Randall R. Rader, *Section 1983, The Civil Civil Rights Action: Legislative and Judicial Directions*, 15 Cumb. L. Rev. 571, 580 (1985) (footnote omitted).

Stated somewhat differently, "[a] local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)). Thus, municipal liability attaches only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.

The Eleventh Circuit has articulated the different ways that a plaintiff can establish municipal liability under § 1983: (1) an official (unconstitutional) policy; (2) the final policymakers acquiesce to a longstanding practice that constitutes standard operating procedure; or, (3) a final policymaker ratifies a subordinate's unconstitutional decision. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). In short, "[a]ll [plaintiff] needed to do was allege a policy, practice or custom of [defendant] which caused" the constitutional violation. *Id.* at 1280.

Here, however, plaintiff failed to do even that. Instead, her allegations merely recast the allegations of disparate treatment contained in Count One of the amended complaint, and make no reference to any policy, practice, or custom that may have caused the alleged violation of her rights under the Equal Protection Clause of the Fourteenth Amendment. For such reasons, Count Five also is due to be dismissed.

## II. CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss will be granted in part and denied in part. Plaintiff's claims in Counts Three and Five will be dismissed. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 24th day of September, 2026.

Senior United States District Judge